## STATES MARINE CORPORATION v. JOHN B. HONOR & CO., Inc.
### No. 7779.

Circuit Court of Appeals, Fifth Circuit.
Dec. 12, 1935.

J. Newton Rayzor and Robt. Eikel, Jr., both of Houston, Tex., and Andrew R. Martinez, of New Orleans, La., for appellant.

W. B. Spencer and Chas. T. Madison, both of New Orleans, La., for appellee.

Before FOSTER, SIBLEY, and WALKER, Circuit Judges.

WALKER, Circuit Judge.

This was an action by the appellee, a corporation engaged in stevedoring, to re-

cover damages for the alleged breach of a contract, in part verbal and in part written, between appellee and the appellant for the appellee stevedoring at stated rates, for the period of one year beginning October 13, 1932, all vessels at the ports of New Orleans, La., and Gulfport, Miss., the stevedoring of which was under the control of the appellant; the breach of contract alleged being the action of the appellant in notifying appellee, on December 27, 1932, that on and after January 10, 1933, appellant would not permit the appellee to do the stevedoring of vessels the stevedoring of which was under the control of appellant, and in not permitting appellee to do such stevedoring on and after the last-named date, with the result of appellee being deprived of profits it would have realized if it had been permitted to do the stevedoring contracted for during the period covered by the contract. Appellant's answer to appellee's petition put in issue some of the allegations of that petition, and set up that under the contract either party had the right to cancel it on 30-days' notice. Upon the conclusion of the evidence, the following request for instructions was made by appellant's counsel:

"Now comes the defendant at the conclusion of the testimony both for plaintiff and defendant, and before argument of counsel to the jury, and before the jury is instructed by the Court, and requests the Court to give the jury the following instructions:

"(1) Defendant requests the Court to instruct the jury that they shall not consider, in awarding damages, if in fact any damages are awarded, any possible loss, suffered by the plaintiff as a result of not handling vessels operated under the name of Smith Line other than those handled by States Marine Corporation between December 27, 1932 and January 27, 1933.

"(2) Defendant further requests the Court to instruct the jury that in considering and determining damages to be awarded to the plaintiff, if any, in connection with vessels of Maclay & McIntyre Company operated by States Marine Corporation, that the jury shall not take into consideration any vessels operated in and out of the ports of New Orleans and Gulfport, Mississippi, subsequent to January 5, 1933 up to and including October 13, 1933.

"(3) Defendant requests the Court to instruct the jury that in considering and determining the damages, if any allowable to the plaintiff as a result of operations by defendant of Leeds Steamship Company's vessels, that said vessels shall be considered on the undisputed evidence as having been operated under the trade name of Smith Line, and are therefore covered by the Smith-Honor contract of February 15, 1932."

The court denied that request. There was no exception to the court's charge to the jury. The jury's verdict was in favor of the plaintiff (appellee) in the sum of $11,927.70, with interest at 5 per cent. from date of judicial demand until paid, and judgment was rendered in pursuance of that verdict.

It may be assumed, without being decided, that the court's action with reference to the requested instructions was erroneous if the proposition stated in any of those instructions was correct, though the three instructions were not separately requested.

To support its claim appellee in the trial offered evidence as to its loss of profits in consequence of it being deprived, during the year covered by the contract, of the stevedoring of four classes of vessels; namely: (1) Vessels operated by the appellant itself; (2) vessels owned or operated by Sir Wm. Reardon Smith & Sons, Limited; (3) vessels owned or operated by Leeds Steamship Company, Limited; and (4) vessels owned or operated by Maclay & McIntyre, Limited. Evidence showed that, while performance under the contract was in progress, appellant controlled the stevedoring of vessels of the three last-mentioned classes at the ports of New Orleans and Gulfport. Appellee claimed that, in violation of the contract, it was deprived of the stevedoring of three ships owned or operated by Sir Wm. Reardon Smith & Sons, Limited, of four ships owned or operated by Leeds Steamship Company, and of ships owned or operated by Maclay & McIntyre, Limited. A witness for the appellee, a certified public accountant, who testified as to the difference between the direct cost of stevedoring vessels of each of those classes and the amounts appellee would have received for such stevedoring by applying the schedule of rates prescribed in the contract sued

on, submitted the following written summary of his findings or conclusions:

"Recapitulation Claim
"John B. Honor & Co., Inc.

| | Estimated Direct Cost | Estimated Revenue | Estimated Gross Profit |
|---|---|---|---|
| Sir. Wm. Reardon Smith & Sons, Ltd. | $ 7,475.58 | $10,663.28 | $ 3,187.70 |
| Leeds Steamship Co., Ltd. | 3,595.25 | 5,475.02 | 1,879.77 |
| Maclay & McIntyre, Ltd. | 9,385.62 | 14,227.10 | 4,841.48 |
| States Marine Corporation | 19,897.17 | 30,497.50 | 10,600.33 |
| | $40,353.62 | $60,862.90 | $20,509.28 |

Estimated Direct Gross Profit $20,509.28
Less: Indirect Cost of Twenty-nine (29) Steamers Average $137.01 per Steamer Estimated ...................... 3,973.29

Net Claim .................. $16,535.99"

With reference to that summary the witness stated: "Eliminating the two steamers, the Texas Shipper, and the Grelhead, which arrived after the expiration date of the contract, and figuring the deductions if we omit those two steamers from the claim, eliminating those two steamers reduced the net profit to be recovered by $499.89. The plaintiff's claim, according to the document filed here, the net profit should be reduced by the sum of $499.89, which would leave the net profit $16,036.10."

■ It does not appear from the record that the correctness of the computations made by that witness was controverted. The amount of the jury's verdict, $11,927.70, is the amount last stated in the just set out part of the testimony of the witness; $16,036.10, less $4,108.40, the amount of net profit from stevedoring three ships of Smith & Sons, Limited, and four ships of Leeds Steamship Company, Ltd. The last-stated item, net profit, is arrived at by deducting from $5,067.71, the aggregate of the amounts of gross profits for stevedoring ships of Wm. Reardon Smith & Sons, Limited, and ships of Leeds Steamship Company, Limited, shown by the above set out summary, $959.07, the indirect expense of seven ships at $137.01 per ship. From the just stated facts it is quite manifest that the jury disallowed the claim asserted by the suit in so far as that claim was based upon appellee wrongfully having been deprived of the opportunity to do stevedoring for ships owned or operated by Sir Wm. Reardon Smith & Sons, Limited, or Leeds Steamship Company, Limited. In other words, it appears that the jury, in arriving at its verdict, did what it would have been directed to do if the court had given instructions numbered 1 and 3, requested by appellant. It follows that appellant was not harmed or prejudiced by the court's refusal to give those two requested instructions. Even if the court's action with reference to those two requested instructions was erroneous, the errors are not grounds of reversal, as the findings by the jury on the points covered by those requested instructions were in favor of the appellant. Carlisle Packing Co. v. Sandanger, 259 U.S. 255, 259, 42 S.Ct. 475, 66 L.Ed. 927; Wunderlich v. City of New York (C.C.) 33 F. 854, 855.

■ There was evidence to the effect that during the time covered by the contract, appellant controlled the stevedoring at the ports of New Orleans and Gulfport of vessels owned or operated by Maclay & McIntyre, Limited, except where Maclay & McIntyre, Limited, had made its own arrangements as to such stevedoring. The appellant introduced in evidence a contract, dated January 5, 1933, between East Gulf Stevedoring Company, Inc., and Maclay & McIntyre, Limited, for stevedoring "at the port of New Orleans, La." Other than that contract there was no evidence as to Maclay & McIntyre, Limited, making its own arrangements as to stevedoring which previously it had permitted appellant to control. It is to be inferred that the proposition stated in appellant's above set out requested instruction numbered 2 was based on the evidence of the making of the above-mentioned contract dated January 5, 1933. The sole subject of that contract was stevedoring of Maclay & McIntyre's ships "at the port of New Orleans, La." That contract did not have the effect of arranging or providing for the stevedoring of Maclay & McIntyre ships at the port of Gulfport, Miss. In the stated condition of the evidence, the court is not chargeable with error for refusing appellant's above set out requested instruction numbered 2, which instruction mistakenly implied that undisputed evidence showed that Maclay & McIntyre, Limited, made its own arrangements, effective on and after January 5, 1933, for the stevedoring of its ships, not only at the port of New Orleans, but also at the port of Gulfport, Miss.; the fact being that there

was no evidence requiring or justifying a finding that Maclay & McIntyre, Limited, made any arrangement of its own, effective on and after January 5, 1933, as to the stevedoring of its ships at the port of Gulfport. The court's refusal to give instruction numbered 2, requested by appellant, is sustainable on the additional ground that there was evidence to the effect that after January 10, 1933, the appellee was deprived of the stevedoring of a Maclay & McIntyre ship, the Marthara, at a time when that ship was under charter to appellant, with the result of the appellant having control of the stevedoring of her.

The record showing no reversible error, the judgment is affirmed.